# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STEPHEN B. JONES | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. JKB-18-570 |
| WEXFORD | * | |
| Defendant | * | |

***

## MEMORANDUM OPINION

Plaintiff Stephen B. Jones, an inmate committed to the custody of the Maryland Division of Correction and confined in the Maryland Correctional Training Center in Hagerstown, Maryland, filed this civil rights suit pursuant to 42 U.S.C. § 1983 alleging he was being denied adequate medical care. ECF 1, ECF 8 (supplemental complaint). In response, the only named defendant, Wexford Health Sources, Inc., moves to dismiss the complaint for failure to state a claim upon which relief may be granted. ECF 10. The motion is opposed by Jones. ECF 12. No hearing is necessary to address the pending matters. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, the motion to dismiss will be granted and the complaint shall be dismissed.

### Background

Jones states that he suffers from chronic low back pain for which he receives chronic care. ECF 1-1 at p. 2. He states that on November 9, 2017, Dr. Tessema discontinued a prescription for Elavil[1] he had been taking for pain management, explaining that he was concerned about Jones's age and the potential for developing heart problems while taking that drug. *Id.*

---

[1] Elavil, also known as Amitriptyline, is a tricyclic antidepressant that is contraindicated for patients who have suffered a heart attack. *See* https://www.drugs.com/amitriptyline.html (last visited Feb. 13, 2019).

Jones was seen by Lori Slavick, P.A., on December 16, 2017, to receive a replacement for the Elavil he had been taking, but he claims she refused to help him. *Id.*

On January 10, 2018, Jones was seen by "Dr. Yvonne," who discussed indications for Neurontin[2] with Jones and notified him that he would be weaned off that medication and placed on Cymbalta[3] instead. *Id.* Jones states he did not agree with the change in his medication because Cymbalta is "a mental health drug, not a pain medication[]." *Id.* at p. 3. Nevertheless, he began taking Cymbalta on January 12, 2018, but stopped taking it four days later, citing nose bleeds and dizziness as his reasons for stopping the drug.[4] *Id.*

On January 30, 2018, Jones was seen by Dr. Nimely for a chronic care visit. Dr. Nimely prescribed Elavil for Jones's back pain, but made no mention of it causing heart trouble, or problems with blood pressure, due to Jones's age.[5] *Id.* Although Jones states he was prescribed Elavil, he also states in an administrative remedy procedure complaint (ARP) date February 2, 2018, that he was only receiving Baclofen[6] for pain at that time. *Id.*

In an ARP dated January 23, 2018, Jones claimed that a nurse lied to him about referring him to a doctor for review of his medications after he stopped taking the prescribed medication

---

[2] Neurontin, also known as gabapentin, is an anti-epileptic drug that affects chemicals and nerves in the body that are involved in the cause of seizures and nerve pain. *See* https://www.drugs.com/neurontin.html (last visited Feb. 13, 2019).

[3] Cymbalta, also known as duloxetine, is a selective serotonin and norepinephrine reuptake inhibitor antidepressant used to treat depression and pain cause by nerve damage, "fibromyalgia (a chronic pain disorder), or chronic muscle or joint pain (such as low back pain and osteoarthritis pain)." *See* https://www.drugs.com/cymbalta.html (last visited Feb. 13, 2019).

[4] Side effects for Cymbalta include: feeling light-headed, vision changes, easy bruising or unusual bleeding, painful or difficult urination, headache, confusion, and stomach pain. *See* https://www.drugs.com/cymbalta.html (last visited Feb. 13, 2019).

[5] Side-effects for Elavil include: unusual thoughts or behavior, feeling light headed, chest pain or pressure, pounding heartbeats, confusion, hallucinations, constipation, and easy bruising or unusual bleeding. *See* https://www.drugs.com/elavil.html (last visited Feb. 13, 2019).

[6] Baclofen is a muscle relaxer used to treat muscle symptoms such as spasm, pain and stiffness caused by multiple sclerosis, spinal cord injuries, or other spinal cord disorders. *See* https://www.drugs.com/baclofen.html (last visited Feb. 13, 2019).

2

that was making him sick. ECF 1-1 at pp. 7-8. There is no response on the section of the form reserved for a response; Jones indicates that he has been without medication for his lower back pain for two months. *Id.* In response to an earlier-filed ARP, however, the Warden indicated that while Jones's Elavil prescription was discontinued on November 19, 2017, his Baclofen prescription was increased to a twice daily dose. *Id.* at p. 32. In yet another ARP response, it is noted that in addition to the increased Baclofen dosage, Jones's prescriptions for Neurontin and Naproxen remained in place. *Id.* at p. 34.

On January 31, 2018, Jones filed another ARP complaining that medical staff took away his pain medication and replaced it with mental health medication that is ineffective in treating his pain. ECF 1-1 at pp. 9-10. He threatened that if the Warden did not look into the situation, he would leak the story to "all the news stations around here." *Id.* at p. 10.

In an ARP dated January 16, 2018, Jones referenced a rule violation for which he received 40 days cell restriction. ECF 1-1 at pp. 14-16. He claimed he did not "disrespect" the nurse with whom he spoke, but only disagreed with her plan not to refer him to a physician for review of his medications. *Id.* In another ARP, Jones denied telling the nurse to "go f*ck yourself." *Id.* at p. 20.

In one ARP attached to Jones's complaint, the response from the Warden indicates that his complaint alleging he had been denied medical treatment was being dismissed. The response indicated that the complaint was investigated and it was determined that: Jones became belligerent and refused a physical assessment to assist in addressing his requests for pain medication on December 16, 2017; when he was seen again on December 31, 2017, he became confrontational again; and finally when he was seen on January 10, 2018, the indications for

3

Neurontin were discussed with Jones and he was informed he would be started on Cymbalta. ECF 1-1 at p. 21.

Jones seeks compensatory damages as relief for his claim that the discontinuation and changes in his pain medications constitute cruel and unusual punishment. ECF 1 at p. 3.

In Jones's supplemental complaint, which also consists largely of ARP complaints he has filed concerning his pain medication, he alleges he is being denied care for discriminatory reasons. ECF 8-1 at pp. 3-4. In an April 11, 2018, ARP response, the Warden again indicated Jones's complaint was investigated and it was determined that Jones was currently receiving Baclofen, Amitriptyline, and Ibuprofen for his pain. *Id.* at p. 4. The balance of the supplemental complaint reiterates his position that medical staff at MCTC are taking pain medications away and substituting "mental health medications" for them.

**Standard for Motion to Dismiss**

As noted, Defendant Wexford has filed a Motion to Dismiss the complaint. ECF 10. In reviewing the complaint in light of a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

4

The Supreme Court of the United States explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. However, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563 (citing *Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d, 247, 251 (7th Cir. 1994)) (once a claim for relief has been stated, a plaintiff 'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint').

## Analysis

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). A private corporation, such as Wexford, is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a

theory of respondeat superior. *See Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Maryland Dep't of Public Safety and Correctional Services*, 316 F. App'x 279, 282 (4th Cir. 2009) (unpublished).

Jones has not cited either a corporate policy or a practice by Wexford that has resulted in the deprivation of his constitutional rights, nor can one be discerned from the complaint as supplemented. In his opposition response, Jones argues that Wexford can be held liable for the decisions made by the doctors and nurses who saw him and refused to provide him with pain medication. ECF 12. His argument, however, is unavailing as he simply describes a theory of liability sounding in respondeat superior. Wexford is entitled to dismissal of the complaint against it. Moreover, even if Jones had named as defendants the providers he encountered at MCTC, his complaint fails to state a constitutional claim.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). In order to state an Eighth Amendment claim for denial of medical care, Jones must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543. Deliberate indifference to a serious medical need requires proof that,

objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-7 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King*, 825 F.3d at 218; *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40; *see also Anderson*, 877 F.3d at 544. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference because 'prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison

official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

Assuming without deciding that Jones's chronic lower back pain is sufficiently serious, it is clear from the face of the complaint and supplement that he has received constitutionally adequate medical care. Jones's disagreement with the drugs prescribed to him is not a sufficient basis for an Eighth Amendment claim. The right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011) (emphasis added) (quoting *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977)). While Jones remains free to refuse to take medications prescribed because he has concluded that they are improper despite what medically trained professionals have told him, he does not also have a cause of action against those medical providers based on his disagreement with their decisions regarding his care.

A separate order dismissing the complaint and entering judgment in favor of defendant follows.

Dated this 15 day of Feb., 2019.

FOR THE COURT:

/s/ James K. Bredar
James K. Bredar
Chief Judge